NO. 10-5842

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
_____

**TERRY JAMAR NORRIS,**

**Petitioner-Appellant,**

**v.**

**JERRY LESTER, Warden,**

**Respondent-Appellee.**
_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

_____

## BRIEF OF RESPONDENT-APPELLEE JERRY LESTER, WARDEN

_____

ROBERT E. COOPER, JR.
Attorney General & Reporter
State of Tennessee

WILLIAM E. YOUNG
Solicitor General

ANDREW C. COULAM
Assistant Attorney General
*Counsel of Record*
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 741-1868

## STATEMENT REGARDING SIXTH CIRCUIT RULE 26.1

Respondent-appellee, Jerry Lester, is an official of the State of Tennessee. Pursuant to Rule 26.1(a), a statement of disclosure of corporate affiliations and financial interest is not required.

# TABLE OF CONTENTS

STATEMENT REGARDING SIXTH CIRCUIT RULE 26.1…………………….....i

JURISDICTIONAL STATEMENT……………………………………………..1

STATEMENT OF THE ISSUES………………………………………………..2

STATEMENT OF THE CASE…………………………………………………3

STATEMENT OF THE FACTS……………………………………………...7

SUMMARY OF THE ARGUMENT…………………………………………..11

STANDARD OF REVIEW …………………………………………….…..12

ARGUMENT…………………………………………………………………...15

    I.  THE DISTRICT COURT DID NOT ERR IN DENYING RELIEF
        FOR THE PETITIONER'S INEFFECTIVE-ASSISTANCE-OF-
        TRIAL-COUNSEL CLAIM……………...……………………….....15

    II. THE DISTRICT COURT DID NOT ERR IN DENYING RELIEF
        ON THE PETITIONER'S INEFFECTIVE-ASSISTANCE-OF-
        APPELLATE-COUNSEL CLAIM…………………………………..21

CONCLUSION………………………………………………………………...34

CERTIFICATE OF COMPLIANCE…………………………………………..35

CERTIFICATE OF SERVICE…………………………………………………35

ADDENDUM A: DESIGNATION OF DISTRICT-COURT DOCUMENTS……36

# TABLE OF AUTHORITIES

*Beck v. Ohio*,
　379 U.S. 89 (1964)...........................................................................19

*Bigelow v. Willaims*,
　367 F.3d 562 (6th Cir. 2004) ...........................................................12

*Brown v. Illinois,*
　422 U.S. 590 (1975)…………………………………………………….2, 6, 17

*County of Riverside v. McLaughlin*,
　500 U.S. 44 (1991).....................................................................passim

*Goff v. Bagley*,
　601 F.3d 445 (6th Cir. 2010) ...........................................................22

*Harrington v. Richter*,
　131 S.Ct. 770 (2011)........................................................................16

*Herbert v. Billy*,
　160 F.3d 1131 (6th Cir. 1998) .........................................................13

*Jones v. Barnes*,
　463 U.S. 745 (1983).........................................................................23

*Mason v. Mitchell*,
　543 F.3d 766 (6th Cir. 2008) ...........................................................12

*McCoy v. Court of App. of Wisc., Dist. 1,*
　486 U.S. 429 (1988).........................................................................23

*Smith v. Jago*,
　888 F.2d 399 (6th Cir. 1989) ...........................................................13

*Smith v. Murray*,
　477 U.S. 527 (1986).........................................................................23

*Smith v. Robbins*,
　528 U.S. 259 (2000).........................................................................23

*State v. Huddleston*,
  924 S.W.2d 666 (Tenn. 1996) ...........................................................31

*State v. Terry Norris*,
  No. W2000-707-CCA-R3-CD, 2002 WL 1042184 (Tenn. Crim. App.
  May 21, 2002)..................................................................................passim

*Stone v. Powell*,
  428 U.S. 465 (1976)..................................................................14, 31

*Strickland v. Washington*,
  466 U.S. 668 (1984)......................................................11, 15, 16, 17

*Sumner v. Mata*,
  449 U.S. 539 (1981).........................................................................13

*Terry Norris v. State*,
  No. W2005-01502-CCA-R3-PC, 2006 WL 2069432 (Tenn. Crim. App.
  July 26, 2006)................................................................................passim

*Tucker v. Palmer*,
  541 F.3d 652 (6th Cir. 2008) ...................................................24, 25

*Van Hook v. Anderson*,
  488 F.3d 411 (6th Cir. 2007) ...........................................................24

*Wainwright v. Goode*,
  464 U.S. 78 (1983)...........................................................................24

*Warren v. Smith*,
  161 F.3d 358 (6th Cir. 1998) ...................................................14, 24

*Williams v. Taylor*,
  529 U.S. 362 (2000)...................................................................12, 13

## STATUTES

28 U.S.C. § 2253(c) ...............................................................................1

28 U.S.C. §2254(d)(1)...........................................................................12

28 U.S.C. §2254(d)(2)...........................................................................12

28 U.S.C. § 2254(e)(1)....................................................................14, 24

## JURISDICTIONAL STATEMENT

The respondent concurs with petitioner's jurisdictional statement that this Court has jurisdiction to review the issue certified by this Court under 28 U.S.C. § 2253(c).

## STATEMENT OF THE ISSUES

### I

Whether the district court erred in denying relief on the petitioner's claim that his trial counsel was ineffective in failing to attain suppression of the petitioner's confession under *Brown v. Illinois*, 422 U.S. 590 (1975), because the petitioner was allegedly arrested without probable cause.

### II

Whether the district court erred in denying relief on the petitioner's claim that his appellate counsel was ineffective in failing to raise or win the argument that the length of the petitioner's warrantless detention was unconstitutional under *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

2

## STATEMENT OF THE CASE

On March 30, 1998, the petitioner's trial counsel filed a motion to suppress the petitioner's statement containing his confession to the murder of the victim, Keith Milem.  (Record entry 35-1, trial technical record, at 674-76.)[1]  During the subsequent hearing, the petitioner argued that the Memphis, Tennessee police intentionally withheld his epilepsy medicine and thereby extracted an involuntary confession to the murder of Mr. Milem.  (Record entry 35-1, trial technical record, at 680.)  Counsel also argued that the petitioner's *Miranda* rights were violated when he initially refused to sign a *Miranda* waiver and was not provided with counsel.  (Record entry 35-1, trial technical record, at 680.)  After a hearing, the trial court denied the motion and found that there was no evidence that the police intentionally withheld the medicine and that the defendant did not ask for a lawyer. (Record entry 35-1, trial technical record, at 681-82.)

In 1999, a Shelby County, Tennessee Criminal Court jury found the petitioner guilty of second-degree murder.  He was sentenced to twenty-one years' imprisonment.  *State v. Terry Norris*, No. W2000-00707-CCA-R3-CD, 2002 WL

---

[1] To remain consistent with the petitioner, the respondent will cite to the record entries by their electronic-court-filing ("ECF") document number and the applicable PageID numbers, as placed on the top of the documents' pages. Similarly, when referring to the petitioner's current appellate brief before this Court, the respondent will cite to the ECF page number placed on the top of brief's pages.

1042184, at *1 (Tenn. Crim. App. May 21, 2002), *perm. app. denied* (Tenn. Nov. 4, 2002).

After his conviction, the petitioner obtained new counsel, Robert Brooks, who filed a motion for a new trial and represented the petitioner on direct appeal. *State v. Norris*, 2002 WL 1042184, at *9. Mr. Brooks argued that the petitioner's former trial counsel was ineffective because trial counsel failed to file a motion to suppress on the basis (1) that there was no probable cause for the petitioner's arrest and (2) that the petitioner was improperly held so that the police could further investigate the case. (Record entry 35-10, appellant's brief on direct appeal, at 1609-11; record entry 35-12, appellant's reply brief on direct appeal, at 1643-1644.) The new counsel also argued that trial counsel was ineffective for arguing a theory of defense inconsistent with the wishes and the testimony of the petitioner. (Record entry 35-10, appellant's brief on direct appeal, at 1612; record entry 35-12, appellant's reply brief on direct appeal, at 1645-1646.) After a hearing in which Mr. Brooks called seven witnesses, his motion was overruled. (Record entry 35-9, trans. of mtn. for new trial; record entry 35-1, trial technical record, at 727.)

The petitioner appealed, and the Tennessee Court of Criminal Appeals, examining all the theories, affirmed the judgment. *State v. Norris*, 2002 WL 1042184, at *7-*9. With regard to the suppression arguments, the court cited

4

*McLaughlin* and *Brown*. *Id*. at *8. In its review of the evidence, the court did not overturn the trial court's factual finding, based on the testimony of two arresting officers, that the petitioner's confession occurred within 48 hours of his arrest or that the detention was not a "ruse." *Id*. at *9. The court further found that probable cause existed at the time of the petitioner's arrest. *Id*. at *10. The court, therefore, held that the petitioner did not suffer ineffective assistance of trial counsel. *Id*. The Tennessee Supreme Court denied review. *Id*. at *1.

The petitioner then timely sought post-conviction relief. The trial court dismissed his petition, and the Tennessee Court of Criminal Appeals affirmed that dismissal. *Terry Norris v. State*, No. W2005-01502-CCA-R3-PC, 2006 WL 2069432, at *1 (Tenn. Crim. App. July 26, 2006), *perm. app. denied* (Tenn. Dec. 18, 2006). The court found that there was conflicting testimony regarding the time the petitioner was taken into custody, and held that the petitioner did not meet his burden of showing that he was in custody more than 48 hours prior to giving his confession. *Id*. at *9. The court, therefore, affirmed the post-conviction court's denial of the petitioner's claim. *Id*. at *9-*10.

On December 10, 2007, the petitioner filed in the district court a *pro se* habeas-corpus petition, which he later amended. (Record entries 1, 20, Petition and Amended Petition.) After briefing by the parties, the district court denied Norris' petition on June 23, 2010, and declined to grant certification for appeal.

5

(Record entry 47, Order.)  Norris timely filed a notice of appeal on July 15, 2010. (Record Entry 49, Notice of Appeal.)  Norris then moved for certification to appeal, which this Court granted as to two ineffective-assistance-of-counsel claims: (1) whether trial counsel was ineffective for failing to challenge the petitioner's confession as unconstitutional under *Brown v. Illinois*, 422 U.S. 590 (1975); and (2) whether his appellate counsel was ineffective for inadequately presenting a challenge to the petitioner's confession under *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

The Court subsequently granted the substitution of Jerry Lester, the respondent's current warden, for Tony Parker, as the respondent.

6

## STATEMENT OF THE FACTS

A summary of the evidence adduced at Norris' trial and post-conviction proceeding is set forth in detail in the opinions of the Tennessee Court of Criminal Appeals on post-conviction review. *Norris v. State*, 2006 WL 2069432, at *1-*6; *State v. Norris*, 2002 WL 1042184, at *1-*6, *7-*8, *9. The court described the evidence as follows:

> On March 10, 1997, nineteen-year-old victim Keith Milem was found shot to death outside the home where he lived with his uncle. On the evening of March 11, 1997, the [petitioner] was taken into custody by police and questioned about the crime. On March 13, 1997, the [petitioner] confessed to shooting the victim. The [petitioner] informed police of the location of the murder weapon, a nine-millimeter semiautomatic pistol, and police recovered the gun and submitted it for testing. Results of tests performed on the gun indicated that the fatal shots had indeed been fired from the [petitioner's] gun.
>
> . . .
>
> At the hearing on the motion to suppress the [petitioner's] statement, the evidence revealed that the [petitioner] was taken into police custody for questioning without a warrant on the evening of March 11, 1997. Officers transported the [petitioner] to the Memphis Police Department Homicide Office for a formal interview. There, he was advised of his rights. According to officers, the [petitioner] refused to sign a waiver of rights form, but agreed to talk to the officers. At the time, the [petitioner] denied any involvement in the death of the victim. At 8:20 p.m. on March 11, 1997, the [petitioner] was allowed to telephone his mother. Officers then booked the [petitioner] into jail. The [petitioner's] "arrest ticket" indicated that the [petitioner] was arrested at 8:45 p.m. on March 11, 1997.
>
> An officer who participated in questioning the [petitioner] testified that on March 13, 1997, the [petitioner] was again advised of his

rights, and he signed a waiver of rights form at 4:05 p.m. The [petitioner] then told officers that he did not wish to make a statement until he spoke to his mother, and the officers therefore allowed the [petitioner] to telephone his mother at 6:50 p.m. At 7:20 p.m., the [petitioner] made a statement to the officers, in which he confessed to shooting the victim. At 8:20 p.m., the [petitioner] signed the typewritten statement that he made to police. The officers then allowed the [petitioner] to make another phone call at 8:23 p.m. According to one officer, during the [petitioner's] interview on March 13, the officers fed him a meal.

. . .

In this case, the [petitioner] was arrested at 8:45 p.m. on March 11, 1997, and he confessed to the crime at 8:20 p.m. on March 13, 1997.

**Post-Conviction**

At the petitioner's [post-conviction] evidentiary hearing, Lieutenant A.J. Christian of the Brighton Police Department testified that in 1997 he was a detective with the Memphis Police Department's Homicide Bureau involved in the petitioner's case. Christian said that the petitioner's arrest report showed that he was in police custody at the homicide office on March 11, 1997, at 7:30 p.m. He could not recall the exact time that the petitioner was taken into custody and explained that the arrest ticket would have the actual time and that the arrest narrative report "was just a supplement documenting the course of action that was taken after he was taken into custody."

Marcia Daniel, the petitioner's mother, testified that on March 11, 1997, police officers "called between 4:30 [p.m.] and five looking for [the petitioner]." Daniel located the petitioner and said he arrived home "between five and 5:15 [p.m.]." The police, who had arrived at the residence "maybe three to five minutes" before the petitioner, left with him "approximately about 5:45" p.m. Daniel testified that she told trial counsel, but not appellate counsel, of these events. Daniel acknowledged that the petitioner called her on March 13, 1997, and that, although she could not recall the time of the phone call, he told her he had agreed to talk to the police but wanted to talk with her first.

Trial counsel testified that during his representation of the petitioner, he believed he had "open-file discovery" from the State. Asked if he was aware that the petitioner was in police custody at 7:30 p.m. on March 11, 1997, trial counsel stated "that either [he] was aware or [he] should have been aware. [He], frankly, [did not] remember if anything was on the arrest ticket or not." Trial counsel said that at the time he argued the petitioner's motion to suppress his statement to police, he was aware of the "[t]he 48 hour rule" announced in *Huddleston* but acknowledged he "failed to raise that issue." Trial counsel also acknowledged that he did not object to the definition of "knowingly" in the jury instructions. On cross-examination, trial counsel testified that prior to the petitioner giving his statement on March 13, 1997, he was presented with "an advice of rights form" at 4:05 p.m. and signed it at 4:12 p.m.

The petitioner testified that he told appellate counsel that he was arrested at his mother's house on March 11, 1997, "[b]efore 7 p.m." and that more than forty-eight hours passed before he gave his statement to police on March 13, 1997. He acknowledged that the advice of rights form showed that he was given the form at 4:05 p.m. and that he signed it at 4:12 p.m. on March 13, but said he did not put the time on it and could not recall exactly what time he signed it, only remembering "[it] was after the evening meal in the jail." The petitioner also acknowledged signing his police statement at 8:20 p.m. and said that he actually gave the statement verbally before this time.

On cross-examination, the petitioner acknowledged that he was not in custody at 4:05 p.m. on March 11, 1997. He testified that the police initially came to his mother's house that day at 6:05 p.m., but left because he was not at home, and then returned "[s]omewhere around" 7:00 p.m. to question him. He acknowledged that he agreed to talk to the police on March 13, 1997, in exchange for being allowed to talk to his mother, stating that he was able to reach her at 6:50 p.m.

### State's Proof

Appellate counsel testified that he represented the petitioner on his motion for a new trial and on appeal. Discussing the petitioner's *Huddleston* claim, which he raised in the petitioner's motion for a new trial and on appeal, appellate counsel said he focused on the fact that

the petitioner's confession "was clearly illegal" because "from the record [the police] didn't have probable cause to arrest [the petitioner] in the first place." Asked if he thought the amount of time the petitioner was in custody prior to giving his confession was a valid issue to pursue, appellate counsel answered that he "apparently" did not because he did not raise it on appeal.

*Norris v. State*, 2006 WL 2069432, at \*1, \*5-\*6; *State v. Norris*, 2002 WL 1042184, at \*7-\*8, \*9.

## SUMMARY OF THE ARGUMENT

Norris contends that his trial and appellate counsel were ineffective for failing to adequately challenge the admissibility of his confession based on an allegedly illegal arrest and prolonged detention, respectively.    Because the Tennessee Court of Criminal Appeals did not unreasonably apply *Strickland v. Washington*, 466 U.S. 668 (1984), in determining that the petitioner demonstrated neither deficiency nor prejudice required to establish an ineffective-assistance claim, the district court did not err in denying relief.[2]

---

[2] The respondent will argue the issues in the order set forth in the Court's Certificate of Appealability.

## STANDARD OF REVIEW

In reviewing the denial of a habeas petition, this Court considers the district court's legal conclusions anew. *Bigelow v. Williams*, 367 F.3d 562, 569 (6th Cir. 2004). This Court reviews *de novo* a district court's determination regarding a habeas petitioner's ineffective-assistance-of-counsel claim. *Mason v. Mitchell*, 543 F.3d 766, 771 (6th Cir. 2008).

Pursuant to the Antiterrorism and Effective Death Penalty Act (1996) ("AEDPA"), when a state court has already adjudicated a federal constitutional claim on the merits, the writ of habeas corpus may issue in just two instances: (1) if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1); or (2) if the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2).

The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 364-65 (2000). A state court decision will be deemed an "unreasonable application" of clearly established

12

federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 365.    A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*    Rather, the application must also be "unreasonable." *Id.*    Further, the habeas court should not transform the inquiry into a subjective one. *Id.* at 410 (disavowing *Drinkard v. Johnson,* 97 F.3d 751, 769 (5th Cir. 1996)).    Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams,* 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998).   The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness.   This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata,* 449 U.S. 539, 546 (1981); *Smith v. Jago,* 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied,* 495 U.S. 961 (1990).   Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.   The petitioner has the burden of rebutting the presumption of correctness by clear and convincing

13

evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir. 1998), *cert. denied,* 527 U.S. 1040 (1999).

Search and seizure questions under the Fourth Amendment to the United States Constitution are not cognizable in federal habeas proceedings if the defendant was afforded an opportunity to litigate the claim in state court. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).

## ARGUMENT

## I.    THE DISTRICT COURT DID NOT ERR IN DENYING RELIEF FOR THE PETITIONER'S INEFFECTIVE-ASSISTANCE-OF-TRIAL-COUNSEL CLAIM

The district court did not err in denying relief for the petitioner's ineffective-assistance-of-trial-counsel claim because the state-court's decision was not contrary to, or an unreasonable application of, *Strickland v. Washington*.    The petitioner argues that his trial counsel was constitutionally compelled to argue that the police lacked probable cause to arrest him on March 11, 1997.    (Appellant's Br., at 28, 54-58.)    It was reasonable, however, for his trial counsel to focus on the involuntary-guilty-plea theory because, given the evidence at their disposal on March 11, 1997, the police had probable cause to arrest the petitioner.    The petitioner also suffered no prejudice for this choice.    The district court, therefore, should be affirmed.

In making an ineffective-assistance-of-counsel claim, the petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced the petitioner.    *Strickland*, 466 U.S. at 687.    If the petitioner fails to carry his burden of showing either prong, his claim fails, and the Court need not even address the other prong.    *Id*. at 697.

As to deficient performance, the Court must determine whether the counsel's assistance was reasonable considering all the circumstances.    *Strickland*, 466 U.S.

at 688.    The petitioner bears the burden of showing that his counsel's representation fell below an objective standard of reasonableness.    *Id*. at 687-88. Judicial scrutiny of counsel's performance "must be highly deferential" and should not be distorted by the benefit of 20-20 hindsight:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.    *** A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.    Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id*. at 689 (internal quotations and citations omitted).    Strategic choices made after thorough investigation of law and facts are "virtually unchallengeable."    *Id*. at 690. When an ineffective-assistance claim is raised under 28 U.S.C. § 2254(d), the state court determination that counsel was not deficient is entitled to deference if there "is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

Regarding prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.    *Strickland*, 466 U.S. at 694.    "It is not

16

enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693.

It was objectively reasonable for the petitioner's trial counsel to focus on the involuntary-guilty-plea argument. The petitioner suffered from epileptic seizures and was on medication that had to be taken three times per day. (Record entry 35-1, trial technical record, at 674; record entry 35-2, trans. of mtn. to suppress, at 798-800.) The petitioner claimed that the police knew of his need for the medication and intentionally withheld it during his detention in order to exert pressure for a confession. (Record entry 35-1, trial technical record, at 674-75.) These allegations, if they had been found credible, would have been a viable ground for suppression of an involuntary confession induced by coercion.

On the other hand, the *Brown v. Illinois* claim[3] that the police lacked probable cause to arrest the petitioner on March 11, 1997, had significant problems. Prior to the arrest, the police obtained the statement of Lakendra Mull, the petitioner's girlfriend and roommate of the victim. (Record entry 35-9, trans. of mtn. for new trial, at 1458-59, 1503.) Ms. Mull told the police that the petitioner had been jealous of her and the victim. (Record entry 35-9, trans. of mtn. for new trial, at 1501.) She further told the police that she observed the

---

[3] In *Brown v. Illinois*, the Supreme Court held that evidence gathered as a result of an illegal arrest made without probable cause may be suppressed as the fruit of the poisonous tree. *Brown*, 422 U.S. at 605.

petitioner following her and the victim to their home just prior to the shooting on March 10, 1997. (Record entry, 35-9, trans. of mtn. for new trial, at 1496, 1497, 1504.) The petitioner was driving suspiciously at night without his headlights on. (Record entry 35-9, trans. of mtn. for new trial, at 1504.) She also stated that the petitioner had a gun. (Record entry 35-9, trans. of mtn. for new trial, at 1503.) After she dropped the victim at the house, she passed the petitioner approaching the house. (Record entry 35-9, trans. of mtn. for new trial, at 1498.) She learned only minutes later that the victim had been shot immediately outside the house. (Record entry 35-9, trans. of mtn. for new trial, at 1504.) This information constituted probable cause to arrest the petitioner.

Two contradictory observations did not negate probable cause. Ms. Mull did not observe anyone with the petitioner in his car, whereas another witness, Charles Milem, the victim's uncle, thought he heard multiple voices calling to the victim before his killing. (Record entry 35-9, trans. of mtn. for new trial, at 1497, 1499-1500.) Ms. Mull stated that the petitioner was driving his burgundy sedan, whereas Mr. Milem thought he saw the shooter seated in an older model white car. (Record entry 35-9, trans. of mtn. for new trial, at 1497, 1500.) Despite these two contradictions, the police had an eye witness who placed the petitioner at the scene of the crime just before the killing and confirmed that the petitioner had both the means and the motive for the murder. This information was sufficient to establish

18

probable cause for the petitioner's arrest on March 11, 1997.

Contrary to the petitioner's assertion, the police considered all the evidence at their disposal before deciding to arrest the petitioner. There is no evidence that the police ignored Mr. Milem's statement when they came to their decision. To the contrary, Charles Logan, the case officer, testified that the police considered Mr. Milem's statement before making the arrest:

> Q. All right. Are [the statements of Ms. Mull and Mr. Milem]—is this information that you relied on in part during the investigation of this case.
>
> A. Yes. Statements taken relevant to the case, yeah.

(Record entry 35-9, trans. of mtn. for new trial, at 1458.)

> Q. Okay. And part of the evidence or part of the information that you relied on in making that probable cause determination, drafting that documents, were these statements that are before you?
>
> A. Yes.

(Record entry 35-9, trans. of mtn. for new trial, at 1459.) In considering all the information at their disposal, the police had reasonably trustworthy information sufficient to warrant a prudent man in believing that the petitioner had committed an offense. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). It was reasonable, therefore, for the petitioner's trial counsel to focus on the involuntary-guilty-plea ground for the motion to suppress over the *Brown v. Illinois* theory that the police lacked probable cause to arrest the petitioner on March 11, 1997.

19

The petitioner, furthermore, suffered no prejudice from his trial counsel's strategy. The Tennessee Court of Criminal Appeals considered the *Brown v. Illinois* argument and rejected it. *State v. Norris*, 2002 WL 1042184, at *10. Accordingly, the petitioner cannot say that there was a reasonable probability that the outcome of his trial would have been different if his counsel had raised the *Brown v. Illinois* issue in the motion to suppress.

Given the lack of prejudice, the highly deferential scrutiny of trial counsel's conduct, and the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, the state court's denial of the petitioner's ineffective-assistance-of-trial-counsel claim was not contrary to, or an unreasonable application of *Strickland v. Washington*. The district court, therefore, did not err in denying the petitioner's habeas claim, and its decision should be affirmed.

## II. THE DISTRICT COURT DID NOT ERR IN DENYING RELIEF ON THE PETITIONER'S INEFFECTIVE-ASSISTANCE-OF-APPELLATE-COUNSEL CLAIM.

The district court did not err in denying relief on the petitioner's ineffective-assistance-of-appellate-counsel claim because the state court's decision was not contrary to, or an unreasonable application of, *Strickland v. Washington*. The petitioner argues that his appellate counsel was ineffective for failing to raise the *McLaughlin* 48-hour rule[4], which was allegedly "clearly stronger" than other grounds for appeal. (Appellant's Br., at 10, 26-27, 29.) He further argues that the Tennessee Court of Criminal Appeals held that an arrest only occurs when a suspect is booked and that this alleged holding is contrary to federal law. (Appellant's Br., at 35.) Last, he appears to claim that his counsel ineffectively failed to raise the argument that the petitioner's detention was unconstitutional under *McLaughlin* even if he confessed within 48 hours of his arrest. (Appellant's Br., at 10.)

---

[4] In *McLaughlin*, the Supreme Court held that if a suspect is detained for more than 48 hours subsequent to a warrantless arrest and without a probable-cause hearing, his detention is presumptively unreasonable and the State bears the burden of proving that a bona fide emergency or other extraordinary circumstance prevented the suspect from receiving a probable-cause hearing within a reasonable time. Otherwise, the petitioner bears the burden of proving that the delay, though it be fewer than 48 hours in length, was motivated for the purpose of gathering additional evidence to justify the arrest, or for some other improper purpose. *McLaughlin*, 500 U.S. at 56.

21

His arguments are unavailing. First, the state court reasonably applied *Strickland v. Washington* to find that it was reasonable for the petitioner's appellate counsel not to focus on the *McLaughlin* 48-hour rule because there was significant uncertainty regarding the times at which the petitioner was arrested and confessed to the murder. The evidence reasonably led to the conclusion—shared by the trial court, the state appellate court, the post-conviction court, and the district court— that the petitioner confessed within 48 hours of his arrest. Therefore, it was reasonable for his appellate counsel to focus on other grounds, including that the detention allegedly was prolonged for an improper purpose. Second, his representation of the state court's decision is without basis. Last, the petitioner's appellate counsel did in fact raise the argument that the detention was unconstitutionally prolonged even if the petitioner confessed within 48 hours. Appellate counsel was not constitutionally ineffective simply for failing to convince the state court of the argument's merits. In addition, the petitioner suffered no prejudice from his appellate counsel's strategic choices. Accordingly, the state court's decision was not contrary to, or an unreasonable application of, *Strickland v. Washington*, and the district court's decision to deny habeas relief should be affirmed.

Criminal defendants are entitled to counsel on their first appeal. *Goff v. Bagley*, 601 F.3d 445, 462-63 (6th Cir. 2010). The same test enunciated in

*Strickland v. Washington* applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). An integral role of a defendant's appellate counsel is to narrow the issues on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Id.* The process of winnowing out weaker claims on appeal and focusing on those more likely to prevail "from from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). "An attorney, whether appointed or paid, is . . . under an ethical obligation to refuse to prosecute a frivolous appeal." *McCoy v. Court of App. of Wisc., Dist. 1*, 486 U.S. 429, 436 (1988).

The district court should be affirmed because the state court reasonably applied *Strickland v. Washington* to find that the petitioner's appellate counsel reasonably decided not to focus on the *McLaughlin* 48-hour rule. In coming to that decision, the Tennessee Court of Criminal Appeals noted that there was conflicting evidence regarding the time the petitioner was taken into custody and that the petitioner had not overcome his burden of disproving the 8:45 p.m. time of arrest.

*Norris v. State*, 2006 WL 2069432, at *9.

As an initial matter, the state court's factual finding should be given deference. Where evidence conflicts, a federal court on habeas review must defer to the state court's resolution of the fact. *Tucker v. Palmer*, 541 F.3d 652, 661 (6th Cir. 2008) (citing *Patton v. Yount*, 467 U.S. 1025, 1040 (1984) (explaining that even when "the cold record arouses some concern," a federal court may not overturn the factual findings of a state court on habeas review)); *Wainwright v. Goode*, 464 U.S. 78, 85 (1983); *Van Hook v. Anderson*, 488 F.3d 411, 425 (6th Cir. 2007) ("[W]hen two different 'conclusions find fair support in the record' a federal court may not 'substitut[e] its view of the facts for that of the [state] [c]ourt.'" (quoting *Wainwright*, 464 U.S. at 85)). Further, under AEDPA, the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e) (1); *see also Warren,* 161 F.3d at 360–61.

The record supports the conclusion that the arrest occurred at 8:45 p.m. on March 11, 1997. The arrest ticket listed the time of arrest at 8:45 p.m. (Record entry 35-2, trans. of mtn. to suppress, at 754-55.) At the hearing on the motion to suppress, Sergeant A.J. Christian, one of the arresting officers, testified as follows:

> Q.  So you are the—you prepared the ticket and you were one of the arresting officers along with Sergeant McCommon and looks like Sergeant Logan; is that correct?
>
> A.  That's correct.
>
> Q.  Okay.  So he was arrested Tuesday evening . . . .  Would you

24

tell us the time and date at which he was arrested?

A.    This says 8:45 p.m.

Q.    Okay.  On what date?

A.    Tuesday, March the 11th.

(Record entry 35-2, trans. of mtn. to suppress, at 754-55) (ellipsis in the original).

Case officer Charles Logan testified in the hearing on the petitioner's motion for new trial:

Q.    And the defendant was arrested on March the 11th at about 8:45 in the evening; is that correct?

A.    That's correct.

(Record entry 35-9, trans. of mtn. for new trial, at 1504.)

There is, to be sure, conflicting information in the record, but the federal court must defer to the state court's resolution of the fact. *Tucker*, 541 F.3d at 661. For instance, there is evidence in the record to suggest that the arrest occurred at, or shortly before, 7:30 p.m. the same night.  Sergeant Christian testified in the post-conviction hearing that the petitioner was in custody by 7:30 p.m.  (Record entry 35-14, trans. of post-conviction hearing, at 1754.)  The petitioner testified that the police arrived at his mother's house around 7:00 p.m. on March 11, 1997. (Record entry 35-14, trans. of post-conviction hearing, at 1819.)  The police first took pictures of his automobile and questioned him at the house.  (Record entry 35-14, trans. of post-conviction hearing, at 1801.)  According to the petitioner, only then was he was taken into custody somewhat before 7:30 that night.  (Record

entry 35-14, trans. of post-conviction hearing, at 1801, 1813.)

The petitioner's mother puts the time of arrest far earlier. She testified at the post-conviction hearing that her son left her house handcuffed and in police custody at 5:45 p.m. on March 11, 1997. (Record entry 35-14, trans. of post-conviction hearing, at 1758.)

As shown above, the appellate counsel was faced with the conflicting evidence regarding the time of arrest. The record also presented him with conflicting evidence regarding the time of the petitioner's confession. In matching those dates and times, most of the scenarios showed that the petitioner confessed before 48 hours had passed. Accordingly, it was objectively reasonable for the appellate counsel not to focus on the 48-hour rule itself.

For instance, there is evidence to suggest that the petitioner first confessed between 4:12 p.m. and 6:50 p.m. on March 13, 1997. The petitioner waived his *Miranda* rights by 4:12 p.m. on March 13, 1997. (Record entry 35-14, post-conviction technical record, at 1791, 1862.) The petitioner told the police the general contents of the statement he would make sometime thereafter:

> Q. Okay. And did you talk to [the petitioner] orally before taking a written statement?
>
> A. Yes.
>
> Q. Okay. And did he indicate the contents of this statement, this written statement to you orally before it was taken down in writing?
>
> A. Yes.

26

(Record entry 35-2, trans. of mtn. to suppress, at 789.)  The petitioner testified that his formal statement, which occurred later, was transcribed as he gave it verbally. (Record entry 35-14, trans. of post-conviction hearing, at 1803.)

Lieutenant McCommon testified that the petitioner called his mother either right after he had given his statement or right before the police started taking the statement.  (Record entry 35-2, trans. of mtn. to suppress, at 767.)  Petitioner's mother testified in turn that by the first call she received from her son on March 13, 1997, he had already confessed to the police.  (Record entry 35-2, trans. of mtn. to suppress, at 848-49.)  Though there is some confusion as to when that telephone call occurred, the petitioner signed the call-waiver form at 6:50 p.m., and the procedure was that the suspect would make his call directly after signing the waiver form.  (Record entry 35-2, trans. of mtn. to suppress, at 764, 767-68.) There is substantial evidence, therefore, to support a conclusion that the petitioner confessed to the murder before 6:50 p.m. on March 13, 1997.

There is also evidence to suggest that he confessed to the murder at 7:20 p.m. or, at the very latest, at 8:20 p.m. on March 13, 1997.  The petitioner's written statement states, "This statement is made on Thursday, March 13, 1997, at 7:20 PM . . . ."  (Record entry 35-14, post-conviction technical record, at 1863.)  He confessed to shooting the victim, though he couched the shooting in terms of self-defense.    (Record entry 35-14, post-conviction technical record, at 1864.)

27

Accordingly, there is evidence to support a finding that the confession occurred at 7:20 p.m.

The petitioner signed the written statement, after it had been typed up and printed, at 8:20 p.m. (Record entry 35-14, post-conviction technical record, at 1865; record entry 35-14, trans. of post-conviction hearing, at 1803, 1851.) However, the petitioner acknowledged that he verbally gave the contents of the statement before he signed it:

> Q.  What time did you eventually give a statement?
> A.  8:30.  I signed it at 8:30.  8:20, rather.  I apologize.
> Q.  So you actually—verbally gave a statement before that?
> A.  Yes, sir.

(Record entry 35-14, trans. of post-conviction hearing, at 1803.)

The petitioner's trial counsel, therefore, was faced with a multitude of conflicting information. The arrest could well have occurred at 8:45 p.m. on March 11, 1997, whereas the confession occurred either before 6:50 p.m., at 7:20 p.m., or at the latest 8:20 p.m. on March 13, 1997. Alternatively, the arrest may have occurred at, or shortly before 7:30 p.m. on March 11, 1997, and the all but one of the possible times of confession occurred before 7:30 p.m. on March 13, 1997. The earliest time of arrest, 5:45 p.m. on March 11, 1997, is contradicted not only by the police, but by the petitioner himself. That is, nearly all of the possible interpretations of the evidence showed that the detention lasted fewer than 48

28

hours before the confession. Therefore, the state court reasonably applied *Strickland v. Washington* to find that it was objectively reasonable for the petitioner's appellate counsel, who was faced with this information, not to focus on *McLaughlin* 48-hour rule.

In addition, the petitioner suffered no prejudice for his appellate counsel's decision. On direct appeal, the Tennessee Court of Criminal Appeals analyzed whether he had been detained for more than 48 hours prior to his confession. *State v. Norris*, 2002 WL 1042184, at *7-*10. It found that the detention was less than 48 hours long. *Id*. at *9. The post-conviction court and, again, the Tennessee Court of Criminal Appeals, with the benefit of the testimony at the post-conviction hearing, did not overturn that finding. *Norris v. State*, 2006 WL 2069432, at *1, *9. Accordingly, the petitioner has not, and cannot, show that there was a reasonable probability that had his appellate counsel raised the *McLaughlin* 48-hour issue, the outcome of his trial would have been any different. Therefore, the judgment of the district court denying him relief should be affirmed.

The petitioner's next argument, that the Tennessee courts held that an arrest only occurs when a suspect is booked at the station, fails because the characterization of the state court's holdings is completely incorrect. Nowhere in either of the Tennessee Court of Criminal Appeals' decisions does the court state such a holding. Rather, on direct appeal, the court referenced the arrest time of

29

8:45 p.m. from the arrest ticket, and held that even if the confession was as late at 8:20 p.m. two days later, fewer than 48 hours had elapsed after the arrest. *State v. Norris*, 2002 WL1042184, at *7-*9. On post-conviction appeal, the court refused to overturn this factual finding for the following reason:

> At the post-conviction hearing, there was only conflicting testimony offered as to when the petitioner was taken into custody, but no records were entered into evidence to show that this court erred when, on direct appeal, it concluded that the petitioner was arrested on March 11, 1997, at 8:45 p.m.

*Norris v. State*, 2006 WL 2069432, at *9. The petitioner's characterization of the state court's holdings is incorrect. Accordingly, the district court's denial of relief should be affirmed.

The petitioner's last argument regarding the allegedly unreasonable length of detention is somewhat confusing. In his brief's introduction, he starts with the assertion that the Memphis police unconstitutionally detained the petitioner without a probable-cause hearing in order to gather additional evidence. (Appellant's Br., at 9-10.) He then claims that, "[d]espite this clear violation of Norris's *McLaughlin* rights, his counsel failed to raise such a claim direct appeal." (Appellant's Br., at 10.) However, in his argument section, the petitioner forgoes any reference to ineffective assistance of counsel but argues that there was a Fourth-Amendment violation warranting reversal of the judgment. (Appellant's Br., at 39-43.)

His conflicting arguments are unavailing for three reasons. As an initial matter, if the petitioner is arguing the Fourth-Amendment issue directly and is not claiming ineffective assistance of counsel in this regard, the claim is precluded under *Stone v. Powell*, 428 U.S. at 494-95, and was correctly dismissed. If, on the other hand, he is claiming ineffective assistance for his counsel's failure to raise the issue, his claim is factually without support.

His counsel did, in fact, contend that the detention was improperly prolonged to gather more evidence against the petitioner. In the motion for new trial, the counsel argued:

> And that's when they obtained—that's when they did the warrant. That's when they charged him, and that is exactly, precisely what Huddleston says you cannot do. You cannot arrest somebody on suspicion, hold him to do a further investigation to try to find probable cause and then submit the matter to an independent magistrate to determine whether probable cause exists. That is exactly what they did and exactly what *Huddleston* condemns, and all of that should have been suppressed.

(Record entry 35-9, hearing on mtn. for new trial, at 1568-69.)[5] He further made the argument in his briefs to the Tennessee Court of Criminal Appeals on direct appeal. In the initial appellant's brief, he stated "In *Huddleston*, as in the instant case, the court found that the officer made a warrantless arrest . . . for the purpose of continuing his investigation and developing additional evidence to support

---

[5] The petitioner's counsel is citing *State v. Huddleston*, 924 S.W.2d 666 (Tenn. 1996), wherein the Tennessee Supreme Court applies the *McLaughlin* holding.

31

probable cause for an arrest." (Record entry 35-10, appellant's br. on direct

appeal, at 1611.) In his reply brief, he stated:

> *Gerstein v. Pugh*, 420 U.S. 590, 95 S.Ct. 2254, 45 L.E.2d 416 (1975),
> mandates a prompt judicial determination of probable cause and
> *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114
> L.Ed. 2d 49 (1191), establishes 48 hours as a period within which a
> judicial determination of probable cause is presumptively prompt.
> Even in the case of a *Gerstein* violation, however, this presumption
> may be overcome if the delay was, nevertheless, unreasonable. An
> example of such an unreasonable delay short of 48 hours is one "for
> the purpose of gathering additional evidence to justify the arrest" **such
> as occurred in this case**.

(Record entry 35-2, appellant's reply br. on direct appeal, at 5 (emphasis added).)

The petitioner's argument that his counsel failed to raise the issue with the

Tennessee state courts is incorrect. The district court's dismissal of his claim

should therefore be affirmed.

In addition, the evidence cited by the petitioner shows that he did not suffer

prejudice. The petitioner twice quotes the following excerpt from Captain Logan's

testimony at the hearing on the motion for new trial:

> Q.    But you didn't have enough to charge him; is that what you're
>       saying, at that point?
> A.    No.

(Appellant's brief on direct appeal, at 19, 41, *quoting* record entry 35-9, trans. of

mtn. for new trial, at 1517.) Significantly, however, the petitioner misreads the

plain wording of the testimony. Captain Logan was asked whether he agreed with

the assertion that he did not have probable cause to arrest the petitioner on March 11, 1997. The answer is in the negative: he disagreed with the statement. The petitioner would have the witness's "no" mean "yes." This misreading of the plain meaning of the testimony contradicts Captain Logan's other testimony, in which he affirmatively states that he believed he had probable cause to arrest the petitioner on March 11, 1997, because of the witness statements of Ms. Mull and Mr. Milem. (Record entry 35-9, trans. of mtn. for new trial, at 1494, 1504.)

The police did not improperly prolong the petitioner's detention without a probable-cause hearing for a simple reason: they did not need to do so. They subjectively believed that they had probable cause to arrest the petitioner on March 11, 1997; therefore, it would make no sense for them to hold him without a hearing to obtain further evidence. (*See* Record entry 35-9, trans. of mtn. for new trial, at 1494, 1504.) As the state court's factual finding is that 48 hours did not elapse between his arrest and his confession, the petitioner bears the burden of showing that the prolonged detention was motivated by some improper reason. *McLaughlin*, 500 U.S. at 56. The petitioner has failed to bear that burden, as the evidence reasonably shows only that the police continued their investigation into the murder in parallel to the petitioner's detention, not that the prolonged detention was because of the continuing investigation. The petitioner, therefore, suffered no prejudice from his counsel's representation, and the district court's denial of the

33

claim should be affirmed.

## CONCLUSION

For the reasons stated above, the judgment of the district court should be affirmed.

Respectfully submitted,

ROBERT E. COOPER, JR.
Attorney General & Reporter

WILLIAM E. YOUNG
Solicitor General

/s/ Andrew C. Coulam_____
ANDREW C. COULAM
Assistant Attorney General
Criminal Justice Division
P.O. Box 20207
Nashville, Tennessee 37202
Telephone: (615) 1868
Facsimile: (615) 532-7791
Email: Andrew.Coulam@ag.tn.gov
Attorney for Jerry Lester

## CERTIFICATE OF COMPLIANCE

I, Andrew C. Coulam, hereby certify that the foregoing brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a). The foregoing brief contains 7,383 words in Times New Roman, 14-point, proportional-type font.

/s/ Andrew C. Coulam
ANDREW C. COULAM
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, Andrew C. Coulam, counsel for the respondent-appellee, Jerry Lester, hereby certify that the foregoing was filed electronically on the 7th day of December, 2012, via the Court's CM/ECF system, which will automatically and electronically forward a copy of the forgoing through the notice of docket activity to counsel for the petitioner-appellant, Kellen S. Dwyer, at his email address of kellen.dwyer@kirkland.com.

/s/ Andrew C. Coulam
ANDREW C. COULAM
Assistant Attorney General

**ADDENDUM A: DESIGNATION OF DISTRICT-COURT DOCUMENTS**

Pursuant to L.R. 30(b), counsel certifies that a true copy of relevant district-court documents are located in the district court's electronic record as follows:

| <u>Document Description</u> | <u>District Court Record Entry No.</u> |
|---|---|
| Petition …………………………………………………………………1 | |
| Amended Petition …………………………………………………….20 | |
| Answer ……………………………………………………………..21 | |
| Notice of Electronic Filing of State Court Record …………………………..35 | |
| Order Dismissing Case ………………………………………………47 | |
| Judgment …………………………………………………………..48 | |
| Notice of Appeal …………………………………………………….49 | |